## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION (DAYTON)

| | | |
|---|---|---|
| DeShawna Moore<br>3305 Urban Hollow Court, Apt. A<br>Urban Crest, Ohio 43123, | : | CASE NO. |
| | : | |
| Plaintiff | : | |
| vs. | : | |
| Reliable Home Health Care LLC<br>c/o Sheikuna M. Omar, Statutory Agent<br>6161 Busch Boulevard, Suite 330<br>Columbus, Ohio 43229, | : | |
| | : | |
| Defendant | | |

## COMPLAINT AND JURY DEMAND

## INTRODUCTION

1. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000 and 2000e et seq. ("Title VII"), including 42 U.S.C. §2000e-3(a) and Ohio Rev. Code, including §§ 4112 *et seq*., and 2730.01, for defamation (state claim), hostile work environment sexual harassment (federal and state claims), retaliation (federal and state claims), wrongful termination (state claim) on behalf of Plaintiff, Deshawna Moore ("Deshawna"), for complaints of and opposing sexual harassment and assisting and/or participating in an investigation or proceeding regarding the foregoing complaints (federal and state claims).

**PARTIES, JURISDICTION, AND VENUE**

2. Deshawna is a resident of Franklin County, Ohio and is a female, member of a protected class, and was employed by Defendant, Reliable Home Health Care, LLC ("Reliable"), until she was constructively discharged on March 9, 2020.

3. Reliable maintains an office in Dayton, Montgomery County, Ohio at which Deshawna worked.

4. Deshawna was an at-will employee of Reliable within the meaning of Title VII.

5. Reliable directly and by and through their agents, employees and representatives, directly and/or vicariously engaged in a policy, pattern and practice, as is more fully set forth throughout this Complaint, in which Reliable willfully, intentionally, continually and unlawfully sexually harassed, created and maintained a hostile work environment against, retaliated against and wrongfully discharged Deshawna as stated more fully above and below and ratified said actions and inactions. Reliable for the allegations set forth in this Complaint acted with gross negligence and malice and a conscious or reckless indifference or disregard to Deshawna's federally and state protected right to work without unlawful sexual harassment, retaliation, or wrongful termination.

6. This Court has jurisdiction of these claims pursuant to 28 U.S.C. § 1331 because the action arises under the laws of the United States and involves federal questions based on Title VII and 42 USCS § 12101. This Court also has pendent jurisdiction of state law claims pursuant to 28 U.S.C § 1367.

7. Venue lies in this Southern District of Ohio, Western Division, because Reliable is doing business in and Deshawna suffered hostile work environment sexual harassment,

retaliation and a wrongful discharge and the claims alleged herein arose in this District. Furthermore, venue is proper in this District since this is the District and Division in which all and a substantial part of the events or omissions giving rise to the claims occurred. Venue additionally lies in this District because the unlawful employment practices were committed in this judicial district.

8. Ohio is a deferral state which, along with a work sharing agreement between the Equal Employment Opportunity Commission ("EEOC") and the Ohio Civil Rights Commission (OCRC), provides and allows, *inter alia*, a charge of discrimination to be filed within 300 days of a discriminatory act or longer if certain acts are continuous.

9. All jurisdictional and administrative prerequisites have been met, to wit: Deshawna filed a charge of discrimination with the OCRC (a copy of which is attached hereto as Exhibit "A") which was dual filed with the EEOC. This charge was filed less than three hundred (300) days from the last continuous act of sexual harassment, retaliation and discharge by Reliable against Deshawna.

10. The EEOC issued a Notice of Right to Sue on or about September 9, 2020, a true and accurate copy of which is attached hereto as Exhibit "B". This Complaint is being filed within 90 days of Plaintiff's receipt of the same and Deshawna has satisfied the jurisdictional requirements.

**FACTS**

11. On or about September 10, 2019, Deshawna was hired by Reliable as an office manager in their Columbus, Ohio branch.

12. Reliable provides home health care services to people in need of home health care, and participates in Medicare and Medicaid funding.

13. About a month later, on or about November 10, 2019, as a reward for her work performance, Deshawna was promoted to the position of Director of Human Resources ("HR").

14. Deshawna's promotion required her to relocate from Columbus, Ohio to Reliable's Dayton branch.

15. Shortly after relocating to the Dayton branch, Deshawna became the target of a toxic work environment.

16. Reliable's Dayton branch is relatively small and employs only five employees, including Reliable's Director of Nursing, Zainab Mohammed ("Zainab") and Reliable's owner, Sheikuna Omar ("Sheikuna").

17. On or about January 13, 2020, Zainab, a female, made unwanted sexual comments towards Deshawna.

18. On that day, several male painters were in the office. Zainab told one of the male painters that if she were a lesbian, Deshawna would be her "girlfriend."

19. The painters responded by asking if they were going to get to see a little "girl on girl action."

20. Zainab repeatedly made similar comments for hours while the painters worked in the office. Over the course of those several hours, Deshawna asked Zainab to stop making the comments numerous times.

21. The aforementioned interaction made feel Deshawna feel extremely uncomfortable and degraded, consequently she made an oral report to Sheikuna, a male, that same day.

22. Sheikuna did nothing to rectify the situation, and instead told Deshawna that Zainab was "joking" and that Deshawna should "ignore" the comments.

23. Because Sheikuna's response did nothing to address the situation, Deshawna wrote a report documenting the events, placed the report in the office's complaint binder, and gave copies of her report to Zainab and the Office Manager, Tanya Crouch ("Tanya"). A copy of Deshawna's report is attached as Exhibit "C."

24. Zainab made other similar comments to Deshawna over the course of her employment.

25. Reliable was a business tenant and its landlord's office was located directly next door. Mostly men worked in the office next door.

26. When Zainab wanted Reliable's landlord to fix something in Reliable's office, she would tell Deshawna that she should go next door to ask because the men next door "liked" Deshawna. Zainab would also suggest that Deshawna wear revealing clothing and flirt with the men next door so that Reliable could obtain favors not otherwise available.

27. Deshawna told Zainab to stop making such comments.

28. On or about January 22, 2020, Zainab instructed Deshawna to write a doctor's order for a referral that came into Reliable.

29. Deshawna is not a medical professional and cannot legally write a doctor's order.

30. Not knowing how to respond to Zainab's request, Deshawna sought advice from the Columbus branch Office Manager, Josephine Afful ("Josephine"). Josephine revealed to Deshawna that Zainab had also demanded that she write doctor's orders.

31. Deshawna documented this situation in a report, which she placed in the office's complaint binder and gave copies to Tanya and Zainab. A copy of Deshawna's report is attached as Exhibit "D."

32. Although Deshawna worked full time at Reliable at an office which Reliable provided her, Sheikuna paid Deshawna as a 1099 independent contractor rather than as a W2 payroll employee.

33. Deshawna brought her payroll status to Sheikuna's attention on numerous occasions; however, Sheikuna never rectified the situation and continued paying Deshawna as a 1099 independent contractor.

34. After Deshawna made her aforementioned reports, Sheikuna began taking adverse employment actions against Deshawna by taking managerial duties away from her and replacing them with administrative and clerical assignments.

35. After Deshawna made her aforementioned reports, Deshawna was no longer allowed to issue checks to employees or perform marketing functions for Reliable.

36. After Deshawna made her aforementioned reports, Deshawna was expected to help with clerical issues around the office and answer phone calls as a general receptionist.

37. After Deshawna made her aforementioned reports, Zainab began making disparaging comments towards Deshawna.

38. After Deshawna made her aforementioned reports, Zainab told Deshawna that she should not work the front desk because of her "looks."

39. After Deshawna made her aforementioned reports, Zainab told her she was no longer allowed to speak to Josephine in the Columbus office although Zainab knew Deshawna had a collegial relationship with Josephine.

40. After Deshawna made her aforementioned reports, Sheikuna directed that the sign on Deshawna's door be changed to "Hiring Manager," which was a demotion from her position as HR Director.

41. On March 5, 2020 and March 6, 2020, Deshawna electronically filed two complaints with the Ohio Attorney General related to Reliable's adverse employment actions. A copy of Deshawna's confirmation emails from the Ohio Attorney General's office are attached as Exhibit "E" and Exhibit "F."
42. Sheikuna made the work environment at Reliable even more hostile and unreasonable by using a video camera to spy on Deshawna.
43. Reliable placed a video camera in Deshawna's enclosed office which directly faced her desk.
44. Deshawna moved her desk to the side of her office so that she was out of view of the spying camera.
45. When Deshawna arrived to work the next day, she saw that the video camera had been moved to once again directly face her and her desk.
46. Deshawna felt extremely uncomfortable knowing that Sheikuna was watching her while she was in her office behind a closed door, where she expected a certain level of privacy because she closed her door to make personal calls during lunch, to adjust her clothing, etc.
47. Deshawna asked Sheikuna why he was spying on her. Sheikuna told Deshawna that he had video cameras monitoring every room because employees had allegedly stolen money from Reliable in the past. However, handling money was not within Deshawna's job duties, and therefore that could not have been a reason to constantly monitor her office.

48. After Deshawna confronted Sheikuna about being monitored, Sheikuna, in the presence of other employees, intentionally and falsely accused Deshawna of neglecting her job in a deliberately demeaning and highly embarrassing manner.

49. Having endured months of harassment, retaliation, and now a public humiliation over intentionally false accusations, Deshawna, as any reasonable employee, could no longer endure the toxic environment fostered by Reliable and resigned.

50. After her constructive discharge, Sheikuna and Zainab defamed Deshawna by falsely telling employees and clients that Deshawna was fired for stealing.

**COUNT ONE: Sexual Harassment - Title VII of the Civil Rights Act of 1964**

51. Deshawna restates each and every prior paragraph of this Complaint, as if they were fully restated herein.

52. Deshawna is a member of a protected class under Title VII.

53. Deshawna was subjected to unwelcome sexual harassment when Zainab made degrading sexual comments to and about Deshawna in front of a room full of males by indicating that if she were lesbian, Deshawna would be her girlfriend.

54. Further, Deshawna was subjected to unwanted sexual harassment when Zainab repeatedly asked Deshawna to ask the men next door for favors while wearing revealing clothing.

55. Reliable's harassment, through its supervisory employees and agents, was based on sex given that Deshawna is female and the comments made by Zainab were based on Deshawna's sex.

56. Reliable's comments created an environment for Deshawna in which no reasonable person could be expected to work.

57. Reliable's misconduct was sufficiently severe and pervasive and affected the terms, conditions and privileges of Deshawna's employment and matters directly and indirectly relating to Deshawna's employment and prevented Deshawna from performing her job, thus altering the terms and conditions of Deshawna's employment and created, along with Reliable's failure to take timely or appropriate corrective action, an intimidating, hostile, offensive and abusive work environment for Deshawna based on Deshawna's gender (female) and unreasonably interfered with her employment and work performance and seriously affected Deshawna's psychological well-being.

58. Reliable failed to take reasonable steps to correct their misconduct after Deshawna made verbal and written reports of the situation.

59. As a direct and proximate cause of Reliable's actions, Deshawna has suffered and will continue to suffer damages.

**COUNT TWO: Retaliation - Title VII of the Civil Rights Act of 1964 (Title VII)**

60. Deshawna restates each and every prior paragraph of this Complaint, as if they were fully restated herein.

61. Deshawna engaged in a protected activity under Title VII when she reported Zainab's harassment, which she believed to be unlawful discrimination.

62. Reliable became aware of Deshawna's reports on at least two occasions: 1) when Deshawna verbally reported Zainab to Sheikuna, and 2) when she submitted a written report to Tanya.

63. Deshawna then received adverse employment action when Sheikuna began taking away managerial duties away from her and replacing them with administrative tasks.

64. Sheikuna began taking away Deshawna's job duties shortly after Deshawna made her reports.

65. Given the proximity in time between Deshawna's reports and her adverse employment actions, her positive work history prior to her reports, and Zainab's continuing disparaging remarks, it is clear that Reliable retaliated against her for reporting Zainab's misconduct.

66. Reliable knowingly and willfully retaliated against Deshawna in willful violation of Title VII and they acted with retaliatory animus.

67. Deshawna was treated differently from and less favorably than similarly situated and comparable employees who did not take part in the above lawful activities.

68. As a result of Reliable's retaliation, failure to take timely or appropriate corrective action, and Zainab's continuous misconduct, Deshawna was in an environment which no reasonable person could endure and was constructively discharged on March 9, 2020.

69. For each of Reliable's actions and inactions as set forth in this Count, Reliable engaged in the retaliatory practice with malice, ill will and a willful and conscious or reckless disregard or indifference to Deshawna's federally protected rights to oppose and complain about unlawful sexual harassment without retaliation that had a great probability of causing and did cause Deshawna substantial harm.

70. As a direct and proximate result of Reliable's willful, unlawful and retaliatory employment policies, actions and practices as set forth above and willful retaliation against Deshawna, in willful violation of Title VII and the laws set forth in this Complaint, Deshawna was caused to and did suffer and has the right to the damages more fully specified below but which include, inter alia, lost income and wages, including past

and future salary increases, damages for lost pension, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, retirement benefits, insurance and other fringe benefits, pre and post judgment interest, costs and reasonable attorneys' fees.

### COUNT THREE: Discrimination - ORC § 4112.02(A)

71. Deshawna restates each and every prior paragraph of this Complaint, as if they were fully restated herein.

72. This Count is for hostile environment sexual harassment against Reliable in violation of and is being brought pursuant to Ohio Revised Code Chapter 4112, including §§ 4112.02, 4112.02(A), and 4112.99, and is a state pendent action.

73. Zainab made unwanted sexual comments towards Deshawna which Deshawna reported to Reliable.

74. Shortly after Deshawna reported Zainab's conduct, Sheikuna began taking away Deshawna's managerial duties.

75. Then, Deshawna was constructively discharged on March 9, 2020 after Reliable created an environment that no reasonable employee could endure.

76. Reliable's harassment was in direct violation of ORC § 4112.02(A) given that Deshawna belonged to a protected class.

77. Reliable's intentional, unlawful and discriminatory sexual harassment of Deshawna violates the provisions of Ohio Rev. Code Chapter 4112, including §§ 4112.02 and 4112.99, and was willful, reckless, malicious and intentional within the meaning of the foregoing statutes, justifying an award of, inter alia, back pay, front pay, benefits and compensatory, punitive and liquidated damages against Reliable.

78. As a direct and proximate result of Reliable's willful, unlawful and discriminatory employment policies, actions and practices as set forth above and willful actions taken against Deshawna because of her sex, female, in willful violation of Ohio Rev. Code Chapter 4112, including §§ 4112.02 and 4112.99, Charlotte was caused to and did suffer the damages more fully specified below but which include, inter alia, lost income and wages, including past and future salary increases, damages for lost pension, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, retirement benefits, insurance and other fringe benefits, liquidated damages, pre and post judgment interest, punitive damages, costs and reasonable attorneys' fees.

79. As a direct and proximate result of Defendants' actions as set forth above, Plaintiff has suffered the damages and/or has a right to the damages more fully specified above and below and in excess of $25,000.

## COUNT FOUR: Retaliation- ORC § 4112.02(I)

80. Deshawna restates each and every prior paragraph of this Complaint, as if they were fully restated herein.

81. This Count is for retaliation against Reliable in violation of and is being brought pursuant to Ohio Revised Code Chapter 4112, including §§ 4112.02, 4112.02(I), and 4112.99, and is a state pendent action.

82. Zainab made unwanted sexual comments towards Deshawna which Deshawna reported to Reliable.

83. Shortly after Deshawna reported Zainab's conduct, Sheikuna began taking away Deshawna's managerial duties.

84. Then, Deshawna was constructively discharged on March 9, 2020 after Reliable created an environment that no reasonable employee could endure.

85. Reliable's retaliation against Deshawna for reporting Zainab's misconduct is in violation of ORC § 4112.02(I).

86. Deshawna was continually retaliated against by Reliable in retaliation for complaining about and opposing sexual harassment and/or because she assisted and/or participated in an investigation under Ohio Rev. Code Chapter 4112, including §§ 4112.01 to 4112.07, all in violation of Ohio Rev. Code Chapter 4112, including Ohio Rev. Code §§ 4112.02 (I) and 4112.99.

87. As a direct and proximate result of Reliable's willful, unlawful and discriminatory employment policies, actions and practices as set forth above and willful actions taken against Deshawna because of her sex, female, in willful violation of Ohio Rev. Code Chapter 4112, including §§ 4112.02 and 4112.99, Charlotte was caused to and did suffer the damages more fully specified below but which include, inter alia, lost income and wages, including past and future salary increases, damages for lost pension, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, retirement benefits, insurance and other fringe benefits, liquidated damages, pre and post judgment interest, punitive damages, costs and reasonable attorneys' fees.

88. As a direct and proximate result of Defendants' actions as set forth above, Plaintiff has suffered the damages and/or has a right to the damages more fully specified above and below and in excess of $25,000.

### COUNT FIVE: Constructive Discharge

89. Deshawna restates each and every prior paragraph of this Complaint, as if they were fully restated herein.

90. Reliable created a toxic work environment in which Deshawna was discriminated against, retaliated against, and publicly humiliated.

91. No reasonable employee could be expected to endure the conduct perpetrated by Reliable, which include: unwanted sexual commentary, failure to rectify an employee's sexual harassment, constant surveillance even while in an enclosed personal office space, and orders to commit illegal acts.

92. Because Reliable created circumstances in which no reasonable employee could be expected to endure, Deshawna felt compelled to resign.

93. As the direct and proximate cause of Reliable's actions, Deshawna has been injured in an amount to be determined at trial, but reasonably expected to exceed $25,000.00.

**COUNT SIX: Wrongful Discharge in Violation of Public Policy - ORC § 4101.11, § 4101.12, § 4123 *et seq*., § 5747.06, and Ohio Admin. Code 4729-5-30 and 5160-12-01**

94. Deshawna restates each and every prior paragraph of this Complaint, as if they were fully restated herein.

95. The State of Ohio has clear public policies prohibiting the above described conduct of Reliable as well as Reliable's retaliatory employment actions against Deshawna, which policies are manifested through the state constitution, statutes, administrative regulations, and/or common law.

96. The State of Ohio has clear public policies which require employers to ensure the safety, health, and welfare of employees and frequenters under ORC §§ 4101.11 and 4101.12.

97. Reliable violated these policies when Reliable failed to protect Deshawna from unwanted sexual harassment and retaliation.

98. Ohio home health services participating in Medicare and Medicaid funding are regulated by Ohio Admin. Code 5160-12-01, which requires that skilled services be provided by licensed individuals.

99. Under Ohio Admin. Code 4729-5-30, prescriptions must be written by an "individual prescriber acting in the usual course of the prescriber's professional practice."

100. Reliable violated Ohio Admin. Codes 5160-12-01 and 4729-5-30 when Zainab instructed Deshawna, a non-medical professional, to write doctors' orders.

101. The State of Ohio has clear public policies which require employers to withhold an appropriate portion of employees' compensation for tax purposes under ORC § 5747.06; otherwise, employees may be wrongfully denied W2 employee status benefits.

102. Reliable violated these policies when it improperly paid Deshawna as a 1099 independent contractor.

103. Terminating the employment and livelihood of an employee for bringing to an employer's attention the employer's violation of these clear public policies is of an equally serious nature of wrong as the violation of the laws manifesting the policies.

104. Reliable's actions, as alleged above, place these policies in extreme jeopardy, and allowing Reliable to terminate their employees when they raise concerns over violations or report violations of public policy jeopardizes the public interest in compliance with these policies.

105. Reliable's motivation to terminate Deshawna was directly tied to Deshawna's reporting of the conduct described above.

106. Reliable lacked an overriding and legitimate business justification for terminating Deshawna, and any supposed reason for her termination was pretextual.

107. As the direct and proximate cause of Reliable's wrongful discharge of Deshawna, she has been injured in an amount to be determined at trial, but reasonably expected to exceed $25,000.00.

108. Deshawna exhausted her remedies by filing with the OCRC which found no probable cause despite reliable evidence to the contrary, thus her remedies under ORC § 4112 are inadequate.

### COUNT SEVEN: Defamation – ORC § 2730.01

109. Deshawna restates each and every prior paragraph of this Complaint, as if they were fully restated herein.

110. After Deshawna was constructively discharged on March 9, 2020, Sheikuna and Zainab falsely told Reliable employees and clients that Deshawna had been fired for stealing money from the company.

111. In fact, Deshawna never stole money from Reliable and was not fired, but rather constructively discharged.

112. Sheikuna and Zainab knew that Deshawna had never stolen money and that she was not fired from Reliable.

113. By falsely stating that Deshawna stole from Reliable, Sheikuna and Zainab falsely claimed to third persons that Deshawna engaged in a crime of moral turpitude.

114. By falsely stating that Deshawna stole from Reliable, Sheikuna and Zainab injured Deshawna's business reputation.

**DEMAND FOR RELIEF**

**WHEREFORE**, Plaintiff prays for and demands judgment in an amount to be proven at trial and awarded by a jury, but in excess of any and all jurisdictional minimums and, with respect to the pendent state law claims, in excess of Twenty-Five Thousand dollars, as follows:

(a) That this Court award Plaintiff such equitable relief as is proper and an amount to be determined at trial and for a judgment as compensation for the loss of her opportunity and chance to engage in gainful employment, including relief in the form of front pay and future wages, including for the difference in what she was earning, retirement and other benefits and damages, including "black mark" damages;

(b) That this Court award Plaintiff an amount to be determined at trial as compensation for her loss of earnings, adverse health effects, loss of opportunity to engage in gainful employment and future earnings and for humiliation, embarrassment, loss of reputation and loss of self-esteem;

(c) That this Court award Plaintiff an amount to be determined at trial as compensation for lost pension, stock, stock options, bonuses, raises, retirement benefits, insurance, other fringe benefits, retirement benefits available to Plaintiff if she was rehired up to the date Plaintiff was eligible for full retirement benefits and anything else she would have earned;

(d) That this Court award Plaintiff back wages and pay, including fringe benefits, from the date of the sexual harassment or retaliation through the date of her obtaining employment in a similar position with equal pay and benefits with interest in an amount to be determined at trial;

(e) That this Court award Plaintiff an amount to be determined at trial for Plaintiff's emotional distress, mental anguish, pain and suffering, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and medical expenses incurred as a result of psychological or physical harm;

(f) That this Court award Plaintiff liquidated damages in an amount to be determined at trial, including, but not limited to, double damages;

(g) That this Court award Plaintiff punitive damages in an amount to be determined at trial;

(h) That this Court award Plaintiff prejudgment and post judgment interest in an amount and at a rate to be determined at the time of trial;

(i) That this Court award Plaintiff reasonable and all attorneys' fees, expert witness fees and the costs of this action;

(j) That this Court grant Plaintiff consequential damages and other available compensatory damages not specified herein; and

(k) That this Court grant Plaintiff such other and further legal and equitable relief as may be just and proper.

> Respectfully submitted,
>
> Craig T. Matthews and Associates,
> *A Legal Professional Association*
>
> /s/ Craig T. Matthews
> _____
> Craig T. Matthews (0029215)
> Attorney for Plaintiff
> 320Regency Ridge Drive
> Centerville, Ohio 45459
> Telephone: (937) 434-9393
> Facsimile: (937) 434-9398
> Email: cmatthews@ctmlaw.com

## JURY DEMAND

A trial by jury is hereby demanded of the maximum number allowed by law.

/s/ Craig T. Matthews

_____
Craig T. Matthews (0029215)
Attorney for Plaintiff